**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

                            Case No. 16-40080-01-DDC

LOGAN BAYARD BELL (01),

      Defendant.

## MEMORANDUM AND ORDER

The government has charged defendant Logan Bayard Bell in a two-count Indictment: Count 1 charges Mr. Bell with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Count 2 charges Mr. Bell with being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).  Doc. 1.  This matter comes before the court on three motions filed by Mr. Bell: (1) Motion for Bill of Particulars (Doc. 16); (2) Motion to Dismiss Count II (Doc. 18); and (3) Motion to Suppress (Doc. 19).  The government has filed responses to each of these three motions.  Docs. 21, 22, 24.  On April 18, 2017, the court conducted an evidentiary hearing on the Motion to Suppress.  After carefully considering the evidence and the parties' submissions, the court denies all three motions.

### I.      Factual Background

On July 18, 2016, Mr. Bell was driving a gray 4-door Chevy in Salina, Kansas.  While on patrol, Officer Aaron Carswell of the Salina Police Department saw Mr. Bell driving the Chevy. Officer Carswell recognized Mr. Bell from his past interactions with him.  Officer Carswell had

dealt with Mr. Bell before when investigating traffic violations and illegal narcotics. The last of those direct interactions had occurred several months earlier.

Officer Carswell testified that he knew Mr. Bell had a suspended driver's license because he had checked the status of his license several weeks before July 18. In preparation for his testimony at the hearing, Officer Carswell checked the NCIC database to determine the dates when Mr. Bell's license was checked by someone using that system. The NCIC database showed that the Salina Police Department made two inquires in the NCIC database on June 11, 2016, to check the status of Mr. Bell's license. Officer Carswell testified that he made one of these two license checks. Thus, as of June 11, 2016, Officer Carswell knew that Mr. Bell's license was suspended.

The NCIC database also showed that the Saline County Sheriff's Department checked Mr. Bell's license on June 16, 2016, and the Garden City Police Department checked Mr. Bell's license on July 13, 2016. Mr. Bell's license still was suspended on both dates. Officer Carswell testified that he had talked with other law enforcement officers about Mr. Bell in between his check of Mr. Bell's license on June 11 and the traffic stop on July 18. The other law enforcement officers included Saline County Sherriff's Department officers and Garden City Police Department officers. The conversations involved the status of Mr. Bell's driver's license, his suspected drug use, and his suspected involvement in drug trafficking.

Officer Carswell testified that he has conducted hundreds of stops involving drivers with suspended licenses. Officer Carswell also testified about the types of violations that can cause a driver's license suspension. They include DUI convictions, failing to comply with a traffic citation, no proof of insurance, and many other circumstances. Officer Carswell explained that the amount of time that it takes for a driver to have his license reinstated depends on the nature

of the suspension. For example, a driver who has failed to comply with a citation may have his license reinstated after following the court's orders to fulfill the obligations of the citation. Based on his experience, Officer Carswell estimates that it can take a couple of months for a driver to have his license reinstated.

At the motions hearing, the government presented evidence that Mr. Bell's license was suspended on November 27, 2008, because he had failed to comply with a citation. The NCIC report actually shows that Mr. Bell never had a driver's license. Because he had no driver's license and thus no driver's license number, the State of Kansas generated a number to track Mr. Bell in its records system. Mr. Bell never procured a driver's license since the 2008 suspension. Thus, on July 18, 2016, Mr. Bell had no lawful authority to operate a vehicle.

Officer Carswell testified that he knew that Mr. Bell had made no attempts to obtain a driver's license from November 27, 2008 to June 11, 2016, when Officer Carswell checked Mr. Bell's license. Officer Carswell also knew from his more recent conversations with other officers that Mr. Bell's license still was suspended. Based on this knowledge, Officer Carswell stopped Mr. Bell for the suspected traffic violation of driving with a suspended license.

When Officer Carswell initiated the traffic stop, Mr. Bell pulled the car into a small driveway. Mr. Bell immediately exited the vehicle and met Officer Carswell at the back of his vehicle. Officer Carswell asked Mr. Bell about the status of his license. Mr. Bell conceded that he knew his license was suspended.

Officer Carswell testified that Mr. Bell appeared extremely nervous during the traffic stop. He had a hard time standing still, and he was sweating profusely. Based on Officer Carswell's training and experience, he thought Mr. Bell had some reason for his nervousness.

Officer Carswell called Mr. Bell's license into dispatch, and the dispatcher confirmed that Mr. Bell's license was suspended. He thus placed Mr. Bell under arrest.

Based on Officer Carswell's past interactions with Mr. Bell, his known drug history, and his behavior during the traffic stop, Officer Carswell called the Kansas Highway Patrol ("KHP") for a drug-sniffing dog. A KHP trooper was near the scene, and he arrived with a dog about 10 minutes after Officer Carswell had placed Mr. Bell under arrest. The dog conducted a sniff of the car's exterior, and the dog alerted. When Officer Carswell opened the car door to conduct a search, he saw a handgun in plain view inside the compartment of the driver's side door. Officer Carswell also found a marijuana cigarette that appeared torn in half. Based on his training and experience, Officer Carswell believed that a person would tear a marijuana cigarette in half because he was trying to dispose of it or conceal it. The marijuana cigarette was on the driver's floorboard, directly in front of the driver's seat, and within arm's reach of the driver. Officer Carswell testified that the quantity of marijuana he located in the car was consistent with user quantity, not distribution quantity.

As Officer Carswell transported Mr. Bell after his arrest, Mr. Bell asked unsolicited questions. Mr. Bell asked about the charges he was facing. Officer Carswell responded that he had arrested him for driving with a suspended license. Mr. Bell asked, "Is that all?" He also asked Officer Carswell if he had found anything else in the car.

When Officer Carswell stopped Mr. Bell on July 18, he had information that Mr. Bell was a user and distributor of marijuana. He had learned this information from conversations with other officers about Mr. Bell's use and distribution of illegal drugs. The government also proffered at the hearing that law enforcement had interviewed Kimberly French, Mr. Bell's girlfriend. Ms. French told officers that she and Mr. Bell were marijuana users.

## II.     Motion to Suppress

Mr. Bell asserts that the July 18, 2016 traffic stop violated his Fourth Amendment right against unreasonable searches and seizures. And, based on this premise, he moves the court to suppress the evidence discovered after the traffic stop—*i.e.*, the handgun and marijuana found in Mr. Bell's car.

"[A] traffic stop is a seizure under the Fourth Amendment . . . ." *United States v. Salas*, 756 F.3d 1196, 1200 (10th Cir. 2014) (citing *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008)). But a traffic stop is a limited seizure and is "more like an investigative detention than a custodial arrest." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). Courts thus analyze stopping and detaining a vehicle under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006). Under *Terry*, an investigatory detention is reasonable and, hence, constitutional if it is: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstance which justified the interference in the first place." *Terry*, 392 U.S. at 20.

A traffic stop is "justified at its inception" when "the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *Salas*, 756 F.3d at 1200–01 (quoting *Martinez*, 512 F.3d at 1272 (additional citation and internal quotation marks omitted)). "Whether reasonable suspicion exists is an objective inquiry determined by the totality of the circumstances, and 'an officer's subjective motivation for the stop play[s] no role in ordinary [reasonable suspicion] Fourth

Amendment analysis.'" *Id.* at 1201 (quoting *United States v. Harmon*, 742 F.3d 451, 456 (10th Cir. 2014) (additional citations and internal quotation marks omitted)).

Mr. Bell asserts that Officer Carswell lacked reasonable suspicion to initiate the July 18, 2016 traffic stop. Mr. Bell argues that Officer Carswell acted only on a "hunch" that Mr. Bell had a suspended license. The government responds with evidence that Officer Carswell had reasonable suspicion that Mr. Bell was driving with a suspended license based on his prior knowledge about the status of Mr. Bell's license. The government cites two cases with similar facts to support its position. In the first case, the Sixth Circuit rejected a defendant's claim that an officer's knowledge about the defendant's suspended license was stale because the officer had checked the defendant's license status three weeks earlier. *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004). The Sixth Circuit held that the officer had a reasonable basis for suspecting that the defendant still lacked a valid license three weeks after the license check, and thus lawfully could stop the defendant briefly "to determine whether the crime was still being committed." *Id.* In the second case, the Eighth Circuit held that reasonable suspicion existed to stop the defendant because other law enforcement agencies had reported a suspension of the defendant's license several months earlier. *See also United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996).

After briefing the motion, Mr. Bell submitted a Tenth Circuit case as supplemental authority—*United States v. Laughrin*, 438 F.3d. 1245 (10th Cir. 2007). Mr. Bell contends that this case shows that Officer Carswell's past knowledge about the status of Mr. Bell's license is too stale to support reasonable suspicion. *Laughrin* held that an officer lacked reasonable suspicion to stop the defendant based on his prior knowledge about the defendant's suspended license. *Id.* at 1247–48. The officer's information in *Laughrin* was 22 weeks old. *Id.* at 1246.

The Tenth Circuit explained that "whether it is reasonable to believe that [the defendant] has continued to drive without a license depends on the length of time since he was last found to be driving without a license." *Id.* at 1248. The Tenth Circuit distinguished *Laughrin* from the Sixth Circuit's *Sandridge* decision because the 22 days in *Sandridge* "is significantly less than 22 weeks[,]" and without information about the length of *Laughrin*'s suspension, the information was "too stale to justify stopping [the defendant] on the belief that a suspension was still in effect." *Id.*

But, the court's research has revealed that the Tenth Circuit distinguished *Laughrin* in *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1210 (10th Cir. 2007). *Cortez-Galaviz* held that vehicle insurance information from a state database that was 20 days old was sufficiently fresh to support a traffic stop. *Id.* Citing *Laughrin*, the Circuit recognized that "outer boundaries exist for the usefulness of data, even for offenses typically protracted and ongoing in nature" but no reason existed to find that "20 days approaches that boundary for a vehicle insurance infraction." *Id.*

So, the court must decide here whether Officer Carswell's prior knowledge about Mr. Bell's license status is beyond the boundaries of usefulness to support reasonable suspicion. Based on the evidence adduced at the hearing, Officer Carswell learned from his June 11 license check that Mr. Bell's license was suspended. He thus learned this information 37 days before the July 18 traffic stop. This length of time is several days longer than the 20 days that the Tenth Circuit found reasonable in *Cortez-Galaviz*. But, the government asserts that Officer Carswell's information was not limited to his June 11 license check. Officer Carswell knew from his check on June 11, 2016, that Mr. Bell's license had been suspended since November 2008. Officer Carswell also knew that it can take a couple of months for a person to have his license reinstated.

And, Officer Carswell testified that he knew from conversations with other law enforcement officers that Mr. Bell had not taken any action to reinstate his license between the time of his June 11 license check and the July 18 traffic stop.

Viewing all of these facts under the totality of the circumstances, the court holds that Officer Carswell's knowledge was not too stale to nullify reasonable suspicion. To the contrary, the court concludes that 37 days between the license check and the stop, coupled with the other information Officer Carswell knew from other law enforcement officers and the time it takes to reinstate a suspended license, was sufficiently recent to support a reasonable suspicion that Mr. Bell was driving with a suspended license on July 18. The traffic stop thus did not violate Mr. Bell's Fourth Amendment rights, and the court denies Mr. Bell's Motion to Suppress.

### III.    Motion to Dismiss Count II

Mr. Bell also moves to dismiss Count 2 of the Indictment. Count 2 charges Mr. Bell with being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). Mr. Bell argues that the statute is unconstitutionally vague on its face and thus violates the Fifth Amendment. He argues that the statute fails to define the conduct that makes a person an "unlawful user." For support, Mr. Bell relies on the Supreme Court's opinion in *United States v. Johnson*, 135 S. Ct. 2551 (2015).

Our court already has addressed this very argument. In *United States v. Phommaseng*, Judge Julie Robinson declined to extend *Johnson* beyond the context of the Armed Career Criminal Act ("ACCA"). No. 15-20006-JAR, 2015 WL 5937595, at *15 (D. Kan. Oct. 12, 2015). Judge Robinson explained her reasoning:

> *Johnson* considered the residual clause in the definition of "violent felony," which had previously required courts to use a "categorical approach" to determine which offenses were captured by the definition. This approach required courts to look at how the law

> defined an offense, and not how an individual defendant committed the particular crime at issue. There is no such categorical approach at issue in construing § 922(g). Nor has the Court located any case law that has extended *Johnson* as urged by Defendant. Therefore, the Court declines to consider this facial challenge to the statute.

*Id.* (citations omitted). Like Judge Robinson, the court has searched to see if any case has extended *Johnson* in the fashion Mr. Bell urges the court to adopt. It located none. Indeed, the court's research has shown just the opposite. At least two federal courts have rejected facial challenges to the constitutionality of § 922(g)(3) based on the Supreme Court's *Johnson* decision. *See, e.g.*, *United States v. Bramer*, 832 F.3d 908, 909–10 (8th Cir. 2016); *United States v. Holmes*, No. 15-CR-129, 2016 WL 54918, at *2 (E.D. Wisc. Jan. 5, 2016).

The court agrees with Judge Robinson's sound reasoning in *Phommaseng*. The court's construction of § 922(g)(3) does not involve a categorical approach similar to the one that courts used when applying the ACCA's residual clause. Thus, the vagueness concerns that *Johnson* addressed are not presented here. And, Mr. Bell cites no case that has extended *Johnson* to find § 922(g)(3) facially unconstitutional. So, the court denies Mr. Bell's facial challenge to the statute.

Mr. Bell also argues that the statute is unconstitutionally vague as applied because the government lacks sufficient evidence to show a temporal nexus between his drug use and firearm possession. *See United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008) (explaining that an as-applied challenge to § 922(g)(3) "will fail where the government has introduced sufficient evidence of a temporal nexus between the drug use and firearm possession"); *see also United States v. Sanders*, 43 F. App'x 249, 256 (10th Cir. 2002) (describing the "judicially-created requirement of sufficient temporal nexus" between a defendant's drug use and possession of the firearm).

But, Tenth Circuit precedent has directed district courts, when confronted with an as-applied "challenge at the preliminary stage of the proceedings," to decide the issue after the government has presented its evidence at trial. *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997). So, Mr. Bell's motion is premature.

Mr. Bell recognizes the Tenth Circuit's holding in *Reed*, but argues that the government in *Reed* offered just a proffer—it offered no actual evidence that the defendant was an "unlawful user." *See id.* Distinguishing his case from *Reed*, Mr. Bell asks the court to conduct an evidentiary hearing to decide this issue pretrial. But, Mr. Bell cites no cases that have followed his proposed procedure. Indeed the cases take the opposite approach. Courts uniformly have held that an as-applied challenge made pretrial is premature and a defendant may reassert the argument post-trial after the government has presented its evidence on the charge. *See*, *e.g.*, *Phommaseng*, 2015 WL 5937595, at *15 (denying defendant's as-applied challenge without prejudice because it "is being made pretrial" and thus "is premature"); *United States v. Moesser*, No. 2:09-CR-842 TS, 2010 WL 4811945, at *13 (D. Utah Nov. 19, 2010) ("[I]t is clear that the Court may not rule on an as-applied vagueness challenge until after factual determinations are made at trial if such determinations may be of any use to the Court's decision-making process."); *United States v. Anderson*, No. 98-20030-01/07-JWL, 1999 WL 79654, at *6 (D. Kan. Jan. 19, 1999) (holding that it was "premature to apply the vagueness doctrine in dismissing this case before trial"). The court follows established precedent and denies Mr. Bell's as-applied challenge without prejudice.

## IV.    Motion for Bill of Particulars

Finally, Mr. Bell seeks an order from the court requiring the government to file a bill of particulars. Mr. Bell asserts that the Indictment's language does not identify sufficiently the

facts supporting the charge in Count 2 that Mr. Bell is an "unlawful user" of a controlled substance who possessed a firearm in violation of 18 U.S.C. § 922(g)(3). Mr. Bell argues that he cannot defend the allegations adequately without more information to support the charge.

Fed. R. Crim. P. 7(f) provides that "[t]he court may direct the government to file a bill of particulars." The court has broad discretion when assessing such a motion, so long as an indictment is sufficient to enable the defendant to prepare a defense, to avoid prejudicial surprise at trial, and to allow him to plead a double jeopardy defense if he is prosecuted later for the same offense. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). Moreover, "a bill of particulars may not be used to compel the Government to disclose evidentiary details or to explain the legal theories upon which it intends to rely at trial." *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983). And, "a bill of particulars is unnecessary where the information the defendant seeks is available through some other satisfactory form, such as an open file discovery policy." *United States v. Griffith*, 362 F. Supp. 2d 1263, 1278 (D. Kan. 2005).

At the motions hearing, the government represented that it has followed an open file discovery policy in this case. The government also represented that it has provided Mr. Bell with the evidence it intends to present at trial to prove that Mr. Bell is an unlawful user of controlled substances—*i.e.*, Officer Carswell observed that Mr. Bell was nervous, sweating, and could not stand still at the traffic stop; Mr. Bell's car contained a marijuana cigarette on the driver's side floorboard within arm's reach of the driver; and Mr. Bell's girlfriend admitted to law enforcement that she and Mr. Bell used marijuana. With this information, the court concludes that the government has provided sufficient notice to Mr. Bell for him to understand the charges and prepare a defense.

Mr. Bell also argued at the motions hearing that a bill of particulars is necessary to protect his right against double jeopardy. The court disagrees. "An indictment is 'generally sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense.'" *Dunn*, 841 F.2d at 1029 (quoting *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983)). The court determines sufficiency "by practical rather than technical considerations." *Id.* (citing *United States v. Crim*, 527 F.2d 289 (10th Cir. 1975)).

Here, Count 2 tracks the elements of the statute Mr. Bell is charged with violating—18 U.S.C. §§ 922(g)(3). Count 2 of the Indictment identifies: (1) Mr. Bell as an unlawful user of a controlled substance; (2) the approximate date of his possession of a firearm; (3) the firearm (by referring to it manufacturer, model, and serial number); and (4) the fact that the firearm had been shipped and transported in interstate or foreign commerce. The government is not required to include the additional information that Mr. Bell seeks about his drug use in the Indictment. *See*, *e.g.*, *United States v. Molina*, No. 09-40041-RDR, 2010 WL 2346393, at *5 (D. Kan. June 9, 2010) (denying defendant's motion for bill of particulars because his request for the "whens, wheres and with whoms of acts and participation in the charged conspiracy" is not the proper function of a bill of particulars (quoting *United States v. Riggins*, No. 07-40055-04, 2008 WL 558087, at *2 (D.S.D. Feb. 29, 2008))).

The court is satisfied that Count 2 of the Indictment meets minimal due process requirements. The Indictment is not so vague or incomplete that it will prejudice Mr. Bell in later asserting his double jeopardy rights. A bill of particulars thus is not necessary here. So, the court denies Mr. Bell's Motion for Bill of Particulars.

## V.     Conclusion

For the reasons explained above, the court denies Mr. Bell's Motion to Suppress (Doc. 19) and Motion for Bill of Particulars (Doc. 16).  The court also denies Mr. Bell's Motion to Dismiss Count II (Doc. 18), but without prejudice to reassert his as-applied challenge after the government presents its evidence at trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Logan Bayard Bell's Motion to Suppress (Doc. 19) is denied.

**IT IS FURTHER ORDERED THAT** defendant Logan Bayard Bell's Motion to Dismiss Count II (Doc. 18) is denied without prejudice.

**IT IS FURTHER ORDERED THAT** defendant Logan Bayard Bell's Motion for Bill of Particulars (Doc. 16) is denied.

**IT IS SO ORDERED.**

Dated this 25th day of April, 2017, at Topeka, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**